```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**BARRETT BONIN**                                                     **CIVIL ACTION**

**VERSUS**                                                            **NO. 16-1092**

**BILFINGER SALAMIS, INC.**                                           **SECTION "B"(3)**

### ORDER AND REASONS

Before the Court are cross motions for summary judgment.

First is Defendant's "Motion for Summary Judgment" (Rec. Doc. 28), to which Plaintiff timely filed an opposition memorandum (Rec. Doc. 49). Defendant then requested (Rec. Doc. 54), and this Court granted (Rec. Doc. 58), leave to file a reply memorandum (Rec. Doc. 59). Thereafter, Plaintiff requested (Rec. Doc. 62), and this Court granted (Rec. Doc. 64), leave to file a sur-reply memorandum (Rec. Doc. 65).

Second is "Plaintiff's Motion for Partial Summary Judgment" (Rec. Doc. 43), to which Defendant timely filed an opposition memorandum. Rec. Doc. 47. For the reasons enumerated below,

**IT IS ORDERED** that Defendant's motion for summary judgment (Rec. Doc. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment (Rec. Doc. 43) is **DENIED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a fall suffered by Plaintiff Barrett Bonin ("Plaintiff"). Rec. Doc. 1 at ¶ 8. On May 7, 2015, Plaintiff,

an employee of Third-Party Defendant Corrpro Companies, Inc. ("Corrpro"), was working as a painting inspector and monitor on a fixed offshore platform in the Gulf of Mexico off the Louisiana coast. *Id.* at ¶ 5. The platform was owned and/or operated by Third-Party Defendant Murphy Exploration & Production Co., USA ("Murphy"). *Id.* At the time of the accident, employees of Defendant Bilfinger Salamis, Inc. ("Bilfinger" or "Defendant"), a painting subcontractor, were painting the platform and equipment. *Id.* at ¶ 7. Bilfinger employees allegedly left a rope in a walkway next to a fire pump and Plaintiff tripped on the rope, falling "forward, striking his stomach, chest and hands on the steel deck." *Id.* at ¶ 8.

On February 5, 2016, Plaintiff filed suit against Bilfinger, claiming that his injuries were a result of Bilfinger's negligence. Rec. Doc. 1 at ¶ 10.[1]

## II. THE PARTIES' CONTENTIONS

### A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Bilfinger argues that the alleged hazard over which Plaintiff tripped "presented an open and

---

[1] On July 27, 2016, Bilfinger filed a third party complaint, alleging that it and Murphy entered into a "Master Service Agreement" on August 3, 2013, in which Murphy agreed to indemnify Bilfinger from all liability arising from an injury suffered by a Murphy employee or contractor. Rec. Doc. 13 at ¶¶ 6-7. On August 9, 2016, Bilfinger filed a third party complaint against Corrpro, alleging that Corrpro and Murphy entered into a "Master Service Agreement" on August 6, 2013, in which Corrpro agreed to indemnify Murphy from all liability arising from an injury suffered by a Murphy employee or contractor. Rec. Doc. 19 at ¶¶ 6-7. On October 12, 2016, this Court granted a joint motion to sever the third party indemnity claims. *See* Rec. Docs. 23, 26.

obvious condition," such that Bilfinger did not owe a duty to Plaintiff and is accordingly entitled to judgment as a matter of law. Rec. Doc. 28-1 at 1. In the memorandum in support of its motion for summary judgment, Bilfinger copied and pasted approximately nine pages of Plaintiff's deposition testimony. *Id.* at 2-11 (citing Rec. Doc. 28-5). In summary, the excerpted testimony provides that Plaintiff was taking pictures at the time of his accident and was likely looking at a fire pump (the object of his next photograph), with the camera up to his face, when he tripped over the rope. *See id.*

In response, Plaintiff argues that the rope did not present an open and obvious hazard, because (1) Plaintiff's job required him to have a camera to his face and Defendant's personnel knew that; (2) Plaintiff expected the walkways to be clear and had found them clear earlier in the day; and (3) Defendant violated its own policies by failing to clear the walkway. Rec. Doc. 49 at 8.

Defendant's reply memorandum essentially argues that Plaintiff effectively failed to rebut Defendant's assertion that the rope posed an open and obvious hazard and that *Fluence v. Marshall Bros. Lincoln-Mercury Inc.*, 10-482 (La. App. 5 Cir. 11/23/10); 54 So. 3d 711 is controlling and indistinguishable authority. Rec. Doc. 59 at 1-4.

While Plaintiff's sur-reply reiterates some of the arguments made in its original opposition, it also suggests that the only

evidence that the rope posed an open and obvious hazard includes the photographs of the rope taken by Plaintiff after his accident. Rec. Doc. 65 at 3 (citing Rec. Doc. 28-1 at 11). According to Plaintiff, Defendant's resulting "assertion that the rope was open and obvious is a conclusory statement insufficient to support a motion for summary judgment." *Id.* (internal citations omitted). Plaintiff also argues that the rope was not open and obvious because "a large yellow column and equipment concealed the rope from view by individuals entering the area surrounding the fire pump form [sic] the north stair tower." *Id.* (citing Rec. Doc. 65-1 at 4-5; 6-8).[2] Plus, Plaintiff contends, the photographs submitted by Defendant clearly show ladders and other equipment that could have blocked a person's view of the rope. *Id.*

### B.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In his motion for partial summary judgment, Plaintiff argues that he is entitled to judgment as a matter of law finding that (1) Bilfinger owed him a duty of care and (2) Bilfinger breached that duty of care. Rec. Doc. 43-1 at 1. Plaintiff claims that, on the morning of the accident, Bilfinger employees "down rigged (took down tarps and rope and removed paint pots, hoses, and other equipment from the area)" surrounding the fire pump. Rec. Doc. 43-

---

[2] Rec. Doc. 65-1 contains excerpts from Plaintiff Barrett Bonin's deposition. It will be cited by referring to the page numbers in the record document, rather than the non-sequential page numbers of the deposition transcript.

4

1 at 4 (citing Rec. Doc. 43-4 at 23-28).[3] Even though a job safety analysis ("JSA") was supposed to be prepared by Bilfinger, according to both its own rules and the safety policies imposed by Murphy, Bilfinger did not prepare a JSA for the down rigging. *Id.* at 3-4 (citing Rec. Doc. 43-4 at 2, 17-19, 29-30, 46-48; 43-8 at 12-13;[4] 43-9 at 14-19).[5] Further, even though the rope was to be placed in the trash and the crew was supposed to ensure the area was free of any trip hazards prior to taking a break, the crew left a manila rope in the work area around the fire pump. *Id.* at 4 (citing Rec. Docs. 43-2 at 39, 71-72;[6] 43-4 at 13-16, 33-35, 39-45; 43-8 at 20-21; 43-9 at 20-21, 30-34). Plaintiff argues that the rope was left in an area in which people walked and were expected to walk and that the Bilfinger crew knew or should have known that Plaintiff would be inspecting the fire pump. *Id.* at 16-17 (citing Rec. Docs. 43-2 at 71-72; 43-4 at 41; 43-9 at 31, 33). When Plaintiff subsequently "came down the stair tower from the third deck to the hull area . . . [and] started taking pictures of the fire pump and walking around the fire pump, . . . he tripped

---

[3] Rec. Doc. 43-4 includes excerpts from the deposition of Michael Weber, the supervisor for Bilfinger on the day of the accident. This document will be cited by referring to the page numbers in the record document, rather than the non-sequential page numbers of the deposition transcript.
[4] Rec. Doc. 43-8 includes excerpts from the deposition of Marty Pierre, the "OIM" at Murphy.
[5] Rec. Doc. 43-9 includes excerpts from the deposition of Steve Perry, the Senior Safety Supervisor at Murphy.
[6] Rec. Doc. 43-2 includes excerpts from the deposition of Plaintiff Barrett Bonin.

over the manila rope that the Bilfinger crew had left on the deck . . . ." *Id.* at 5 (citing Rec. Doc. 43-2).

Defendant Bilfinger responds that there are genuine issues of material fact "about the very occurrence of this accident, where it occurred and how it occurred . . . ." Rec. Doc. 47 at 1. Specifically, Defendant notes that Plaintiff referred to the rope at issue as "deck-colored" in his deposition, but "manila" in his motion for partial summary judgment. *Id.* at 1-2 (citing Rec. Doc. 47-2 at 4).[7] According to Defendant, in the pictures taken by Plaintiff after the accident and included in Defendant's memorandum in support of its motion for summary judgment, the rope depicted was not a "manila" rope. *Id.* at 2. Plus, Plaintiff stated in his deposition testimony that he fell in the northeast corner of the platform, but on the day of the accident he told the safety coordinator that he fell in the southwest corner of the platform. *Id.* (citing Rec. Docs. 47-2 at 2-4; 47-3 at 2). Further, Plaintiff stated that he took pictures immediately following the accident, but the photographs are time stamped approximately five hours after the accident. *Id.* In any event, Defendant also adopted all of the arguments made by it in its motion for summary judgment. *Id.* at 3. Defendant further clarifies that Plaintiff's failure to see the rope before allegedly tripping "is not mere comparative

---

[7] Rec. Doc. 47-2 contains excerpts from Plaintiff's deposition testimony. The document will be cited according to the record document page number, rather than the page number in the deposition transcript.

6

negligence; it is a complete failure to use ordinary care to avoid an open, obvious tripping hazard . . . ." *Id.* at 4.

### III. LAW AND ANALYSIS

#### A. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Furthermore, at the summary judgment stage, this Court is prohibited from weighing the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (noting that district courts must "refrain from making credibility determinations or weighing the evidence" when deciding a motion for summary judgment) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

**B.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Under the Outer Continental Shelf Lands Act ("OCSLA"), the laws of the United States are extended to "all installations and other devices permanently or temporarily attached to the seabed . . . ." 43 U.S.C. § 1333(a)(1). However, "[t]o the extent that they are applicable and not inconsistent with . . . other Federal laws . . . , the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and . .

8

. fixed structures erected thereon . . . ." § 1333(a)(2)(A); *see also Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (citing *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)); *Pitre v. Aries Marine Corp.*, No. 15-1654, 2016 WL 952251 (E.D. La. Mar. 14, 2016). Both parties agree that, by virtue of the OCSLA, this case is governed by Louisiana law. Rec. Docs. 28-1 at 15; 49 at 4-5.

Pursuant to Louisiana Civil Code article 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE. ANN. art. 2315(A). Louisiana courts use a duty-risk analysis to determine whether to impose liability under article 2315. *Flipping v. JWH Props., LLC*, 50,648, p. 11 (La. App. 2 Cir. 6/8/16); 196 So. 3d 149, 156. Accordingly, a plaintiff must prove:

> (1) The defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).

*Id.* (citing *Pinsonneault v. Merch. & Farmers Bank & Tr. Co.*, 01-2217 (La. 4/3/02); 816 So. 2d 270; *Pamplin v. Bossier Par. Cmty. Coll.*, 38,533 (La. App. 2 Cir. 7/14/04); 878 So. 2d 889, *writ*

*denied* 04-2310 (La. 1/14/05); 889 So. 2d 266); *see also Pitre v. La. Tech Univ.*, 95-1466 (La. 5/10/96); 673 So. 2d 585.

Regarding the duty element, "summary judgment is proper . . . only when it is clear no duty exists as a matter of law; and, the facts or credibility of witnesses are not in dispute." *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716, pp. 2-3 (La. Ap. 3 Cir. 6/23/99); 742 So. 2d 18, 20 (citing *Self v. Walker Oldsmobile Co., Inc.*, 614 So. 2d 1371 (La. App. 3 Cir. 1993) (citing *Coates v. Nettles*, 563 So. 2d 1257 (La. App. 1 Cir. 1990))). Nevertheless, "Defendants generally have no duty to protect against an open and obvious hazard," because the allegedly hazardous condition "may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Flipping*, 50,648, p. 12; 196 So. 3d at 156 (citing *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13); 113 So. 3d 175; *Dauzat v. Curnest Guillot Logging, Inc.*, 08-0528 (La. 12/2/08); 995 So. 2d 1184; *Dowdy v. City of Monroe*, 46,693 (La. App. 2 Cir. 11/2/11); 78 So. 3d 791). To determine if a condition is "unreasonably dangerous," Louisiana courts use a four-part risk-utility balancing test that considers "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, <u>which includes the obviousness and apparentness of the condition</u>; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature." *Dauzat*, 08-

0528, p. 5; 995 So. 2d at 1186-87 (emphasis added) (citing *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 9 (La. 2/20/04); 866 So. 2d 228, 235; *Ardoin v. Lewisburg*, 07-180 (La. App. 3 Cir. 7/18/07); 963 So. 2d 1049.

Here, the issue on summary judgment concerns the second factor in the risk-utility balancing test and accordingly the duty element in a Louisiana court's duty-risk analysis. Turning to the arguments made by the parties, Defendant primarily cites three cases in support of its motion for summary judgment and Plaintiff attempts to distinguish each of those cases.

First, Defendant relies heavily on *Fluence v. Marshall Bros. Lincoln-Mercury Inc.*, 10-482 (La. App. 5 Cir. 11/23/10); 54 So. 3d 711. In that case, the Louisiana Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendants where the plaintiff fell into a four-foot-deep hole as he was moving backward to smooth freshly-poured asphalt. *Id.* at p. 8; 715. Plaintiff admitted that he saw the open drain earlier in the day and the purpose of his "presence at the site was to repair the open trenches . . . ." *Id*.

Here, Defendant argues that "Plaintiff's subjective ignorance of the presence of the rope in the walkway is no defense to this Motion, even if it was due, as in *Fluence*, to the discharge of his job duties." Rec. Doc. 28-1 at 19. Plaintiff, argues that, unlike in *Fluence*, Defendant is not a landowner, so its duty to Plaintiff

11

is substantially different. Rec. Doc. 49 at 10.[8] Plaintiff continues, "[t]his is not akin to a contractor coming onto a landowner's property specifically to pave around a drainage system and then fall into that same drainage system that he observed earlier in the day. Bilfinger contemporaneously created this trap for Bonin." *Id.* While we recognize the differences between *Fluence* and the instant case, including the fact that the *Fluence* plaintiff had seen the hole earlier in the day while the instant Plaintiff had not seen the rope prior to his accident, there are similarities:  neither plaintiff saw the hazard immediately before tripping and both plaintiffs were performing work in a type of construction zone or work area.

Second, Defendant cites to *Rutledge v. Brookshire Grocery Co.*, 523 So. 2d 914 (La. App. 3d Cir. 1988). The Louisiana Third Circuit in *Rutledge* affirmed the district court's judgment on a jury verdict for the defendant store owner where the plaintiff slipped and fell on a tomato in the store parking lot. *Id.* at 915. During the trial, the plaintiff claimed that he was talking to his

---

[8] Specifically, the *Fluence* court relied on the *Dauzat* court's finding that "a landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence." *Fluence*, at p. 7; 714 (quoting *Dauzat*, at p. 4; 1186). Plaintiff seems to maintain that Bilfinger's duty as a co-contractor was to not leave "a rope in a walkway area where individuals working aboard [the platform] would be expected to walk." Rec. Doc. 49 at 10 (citing Rec. Docs. 49-1, 49-2, excerpts from the deposition transcripts of Plaintiff and Mr. Weber). It is unclear from Plaintiff's memorandum how a landowner's duty is materially different from that of a co-contractor, but we recognize that *Fluence* involved a defendant landowner and injuries caused by a hole created by a co-contractor, whereas this case involves a defendant co-contractor and injuries caused by that co-contractor.

12

father when he stepped out of his vehicle, so he did not see the tomato on the ground. *Id.* On appeal, the plaintiff asserted four assignments of error, including an assertion that the trial court improperly instructed the jury. *Id.* The appellate court agreed that the jury instructions used were erroneous, but, instead of remanding the case, the court proceeded to consider the merits. *Id.* at 917. The court affirmed, resting primarily on the finding that the defendant produced sufficient evidence of its cleanup procedures to rebut the presumption of negligence. *Id.* at 918.

Defendant cited to the case as support for the proposition that Plaintiff's prior knowledge of the hazardous condition "is not required to bar his/her claim under an 'Open and Obvious' defense." Rec. Doc. 28-1 at 19. Plaintiff argues that the takeaway "from *Rutledge* is that a presumption of negligence against a storeowner arises when a patron proves they slipped on an object in the store, which then shifts the burden to the storeowner to show that they took reasonably prudent steps to keep their walk areas free and clear of hazards." Rec. Doc. 49 at 12. We agree with Plaintiff's assessment of that case. Plus, despite Defendant's assertions, the court's finding that "the plaintiff did not use reasonable care to see and avoid obvious hazards located in the parking lot" was not the primary basis for the court's decision. *Rutledge*, 523 So. 2d at 918. In so finding, the

court even noted that they were making the finding "(although it is not necessary for us to do so) . . . ." *Id.*[9]

Third, Defendant relies on *Wallace v. Treasure Chest Casino, L.L.C.*, 05-484 (La. App. 5 Cir. 12/27/05); 920 So. 2d 251. In that case, the plaintiff was injured when she "fell as a result of 'misleveling' between the elevator car and the casino floor." *Id.* at p. 2; 253. The defendant moved for summary judgment, arguing that the "misleveled" elevator was an open and obvious hazard, especially considering that a videotape showed that the elevator "stopped at the floor, the doors then partially opened, and, after about eight seconds, [the plaintiff] put her hands into the opening and pried the doors open so that she could enter the elevator." *Id.* at p. 8; 256. The trial court granted the motion and the appellate court affirmed, finding that there was an absence of factual support for the duty element of the plaintiff's claim. *Id.* at p. 9; 257.

Plaintiff distinguishes this case by arguing that he "was not aware of a hazardous situation like the plaintiff in *Wallace*. To the contrary . . . [h]e had no reason to know or suspect that Bilfinger had created a trap for him by leaving the rope in the

---

[9] Nonetheless, it appears to be true that a Louisiana court may find a hazardous condition to be open and obvious, even if the injured party did not previously see the condition. *See, e.g. Gustafson v. Priority Elec., Inc.*, 13-1096, pp. 5-6 (La. App. 1 Cir. 2/18/14); 2014 WL 647704, at *5-6 (where the plaintiff admitted she was walking backwards when she tripped over a stub-out and plaintiffs failed to show that anyone else ever tripped over the stub-out or to offer expert testimony showing that the stub-outs posed an unreasonable risk of harm).

14

walkway." Rec. Doc. 49 at 13. While the instant case is distinguishable, insofar as there was no object obstructing the walkway that Plaintiff <u>had to move or pry open</u> in order to enter the path on which the rope was located, Plaintiff overstates his case when he says he had "no reason to . . . suspect that Bilfinger had created a trap for him . . . ." *Id.* First, Plaintiff knew that the Bilfinger crew was performing work in the area; second, Plaintiff is claiming that Defendant is liable for negligence, not intentional misconduct.

Based solely on the cases already discussed, Plaintiff could be correct that "a fact-finder may conclude that an open and obvious condition does not present an unreasonable risk of harm. (Or the fact-finder may conclude that the condition does present an unreasonable risk of harm.)" *Jimenez v. Omni Royal Orleans Hotel*, 10-1647, p. 8 (La. App. 4 Cir. 5/18/11); 66 So. 3d 528, 533 (internal citations omitted). Before reaching a decision, however, we will consider the arguments made in conjunction with Plaintiff's motion for partial summary judgment.

### C.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As discussed above, this Court will determine whether liability attaches according to Louisiana's duty/risk analysis and corresponding elements. *See* Rec. Doc. 43-1 at 8; 43 U.S.C. § 1333; LA. CIV. CODE ANN. art. 2315; *Flipping*, 50,648, p. 11; 196 So. 3d at

15

156; *see also Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06); 923 So. 2d 627, 633.

First, we will consider Plaintiff's argument that Bilfinger owed a duty of care to Plaintiff as a matter of law. "An independent contractor owes its fellow contractors a duty to exercise reasonable care." *Stokes v. Freeport-McMoran, Inc.*, 2015 WL 8276240 at *3 (E.D. La. Dec. 7, 2015) (citing *Joyner v. Ensco Offshore Co.*, 2001 WL 118599, at *3 (E.D. La. Feb. 9, 2001) (noting that "The Louisiana First Circuit Court of Appeal has set forth the range of duties imposed upon co-independent contractors as follows: 'at the very least, [an independent contractor] owe[s] [a fellow independent contractor] the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition.'").

Thus, the duty imposed upon Bilfinger would generally be the duty imposed on all persons, the exercise of reasonable care. *Joyner*, 2001 WL 118599, at *3. However, Plaintiff's memorandum in support of his motion for partial summary judgment fails to address the argument Bilfinger made in its motion for summary judgment: namely that Bilfinger did not owe a duty of care to protect Plaintiff from an open and obvious hazard that is not unreasonably dangerous. Consequently, Defendant's memorandum in opposition to Plaintiff's motion essentially re-urges the arguments it made in

16

its motion for summary judgment (*see* Rec. Doc. 47 at 3-5) and we must determine if the rope amounted to an open and obvious hazard, such that Defendant Bilfinger owed no duty to Plaintiff.

In trying to find cases with analogous facts, this Court discovered *Smalley v. Ransonet*, 13-522 (La. App. 3 Cir. 11/6/13); 2013 WL 5951509 (unpublished). In *Smalley*, the Third Circuit of Louisiana affirmed the trial court's summary judgment finding that the presence of an iron garden rake did not present an unreasonably dangerous situation. Specifically, the court noted that the plaintiff was aware that tools were kept in the area and she had seen the rake in the area before. *Id.* at *3. "The rake was leaning against the shed and should have been obvious to someone paying attention. [Plaintiff] chose to bend down to pick up a cigarette butt and should have been more cautious in this small area where she knew tools were kept." *Id.*

Like in *Fluence* and the instant case, the plaintiff in *Smalley* did not see the hazardous condition immediately before injuring him/herself. However, unlike in *Fluence* and *Smalley*, Plaintiff in the instant action did not admit to seeing the hazardous condition on an earlier occasion. This fact, alone, distinguishes Plaintiff's case from several cases applying the open and obvious doctrine. *See, e.g. Wilder v. Pilot Travel Ctrs., LLC*, 11-0453 (La. App. 1 Cir. 11/9/11); 2011 WL 5412962 (the appellate court affirmed the trial court's grant of summary judgment in favor of

17

the defendant gas station where the gas station used a pressure hose and a cleaning solution to clean cement slabs and plaintiff walked through the mixture twice before slipping and falling); *Abolofia v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 14-0593 (La. App. 1 Cir. 1/27/15); 2015 WL 782831 (where the plaintiff <u>admitted</u> to seeing the hazardous condition and the appellate court <u>still</u> reversed and remanded the trial court's grant of summary judgment in favor of the defendant because the condition might have presented an unreasonable risk of harm).

Plus, while the photographs might suggest that the rope was open and obvious, there is also evidence that the rope could not be seen from the north stair tower because of a large column and other equipment obstructing a person's view. *See* Rec. Docs. 28-1 at 11; 65-1 at 4-5; 6-8. Thus, there is conflicting evidence and a reasonable jury could return a verdict for either party. Consequently, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 248; *Deville*, 567 F.3d at 164; *Parish*, 98-1716, pp. 2-3; 742 So. 2d at 20 ("summary judgment is proper . . . only when it is clear no duty exists as a matter of law; and, the facts or credibility of witnesses are not in dispute").

We cannot conclude that the rope was not open and obvious, so we cannot conclude that Defendant Bilfinger owed a duty to Plaintiff and we will not address Plaintiff's argument that Bilfinger breached such duty.

**IV.    CONCLUSION**

After reviewing the case law, including cases not cited by either party, we find that a genuine issue of material fact exists as to whether or not the rope created a hazard that was "open and obvious" to all and therefore whether or not Defendant Bilfinger owed a duty of reasonable care to Plaintiff.

New Orleans, Louisiana, this 16th day of December, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE