```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**BARRETT BONIN**                                           **CIVIL ACTION**

**VERSUS**                                                  **NO. 16-1092**

**BILFINGER SALAMIS, INC.**                                 **SECTION "B"(3)**

<u>OPINION</u>

Before the Court is a "Notice of Voluntary Dismissal without Prejudice by Third Party Plaintiff Bilfinger Salamis, Inc.," seeking to dismiss Bilfinger's claims against Third-Party Defendants Murphy Exploration & Production Co., USA ("Murphy") and Corrpro Companies, Inc. ("Corrpro"). Rec. Doc. 96. Murphy and Corrpro both oppose the dismissal. Rec. Docs. 97, 99.

On February 5, 2016, Plaintiff Barrett Bonin ("Plaintiff") filed suit against Defendant Bilfinger after he tripped over a rope that Bilfinger employees allegedly left in a walkway. Rec. Doc. 1. Plaintiff was employed by Corrpro and working on a platform owned by Murphy. *See id.* at ¶ 5. On July 27, 2016, Bilfinger filed a third-party complaint against Murphy, alleging that Murphy agreed to indemnify Bilfinger for any and all liability or damages arising out of any injury to Murphy employees or contractors. Rec. Doc. 13 at ¶ 6. Similarly, on August 9, 2016, Bilfinger filed a third-party complaint against Corrpro, alleging that Corrpro and Murphy entered into an agreement whereby Corrpro agreed to indemnify Murphy and its contractors for any and all liability or

damages arising out of any injury to Murphy employees or contractors. Rec. Doc. 19 at ¶ 7.

After Murphy waived service (Rec. Doc. 21) and Corrpro returned an executed summons (Rec. Doc. 22), but before either had answered or otherwise filed responsive pleadings, Bilfinger moved to sever the third-party indemnity claims against both Murphy and Corrpro (Rec. Doc. 23). On October 18, 2016, we granted the motion to sever. Rec. Doc. 26.

Mere days before trial was scheduled to begin (and just before Bilfinger settled with Plaintiff), Bilfinger filed a "Notice of Voluntary Dismissal" seeking to dismiss its pending claims against Murphy and Corrpro. Rec. Doc. 96. Murphy and Corrpro oppose any such dismissal. Rec. Docs. 97, 99.[1]

Bilfinger claims that it is entitled, as a matter of law, to dismiss its claims against Murphy and Corrpro under Federal Rule of Civil Procedure 41(a)(1) and (c). Rule 41(a)(1)(A) provides that "the plaintiff may dismiss an action <u>without a court order</u> by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ." (Emphasis

---

[1] After filing this opposition, Corrpro and Murphy filed a "Complaint for Declaratory Judgment" in the Eastern District of Louisiana, seeking a declaration that, "pursuant to the Louisiana Oilfield Indemnity Act, the Master Service Agreements and the October 4, 2016 Compromise Agreement . . . Corrpro and/or Murphy are absolved of any obligation to reimburse defense costs incurred by Bilfinger" in the present action. *See* No. 17-696, Rec. Doc. 1. This case was subsequently transferred to this Section. Rec. Doc. 3. Though related, the arguments made in this complaint will not be considered here, because the complaint does not seek a declaration that Corrpro and Murphy cannot be voluntarily dismissed from the present action.

2

added). Rule 41(c), which specifically applies to counterclaims, crossclaims, and third-party claims, provides that "[a] claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made: (1) before a responsive pleading is served; or (2) if there is no responsive pleading, before evidence is introduced at a hearing or trial."

Corrpro argues that "Rule 41(a) governs dismissals of *entire* actions, not of individual claims. Bilfinger, as third party plaintiff, is not in a position to dispose of the entire action." Rec. Doc. 97 at 2 (emphasis in original). Corrpro clearly misunderstands the rule. Rule 41(c) specifically provides for dismissal of third-party claims under Rule 41(a)(1)(A)(i); further, Bilfinger is not seeking to only dismiss some of its claims against Corrpro and Murphy, but the entirety of the third-party complaints.

In *Conseco Life Insurance Company v. Judson*, Conseco initiated an interpleader action naming Hall Davis and Nancy Davis Judson as defendants. 214 F. App'x 446, 447 (5th Cir. 2007) (unpublished). Davis and Judson were in the process of dissolving their company in state court. *Id.* So, Judson filed third-party claims in the federal interpleader action against several people or entities participating in the ongoing dissolution of the company. *Id.* The state court then enjoined Judson from pursuing in federal court any claims related to the dissolution. *Id.* In

3

response to this injunction, Judson filed an "Ex Parte Notice of Dismissal," withdrawing all of her third-party claims, before any of the third parties had filed responsive pleadings. *Id.* The district court treated the notice as a motion and set it for hearing. *Id.* Judson moved to strike the notice from the docket, arguing that "because (1) no adverse party had responded to her claims, and (2) she had not previously dismissed any action based on or including the same claims in any court, Rule 41 . . . gave her the unrestricted right to dismiss her claims without leave of the court." *Id.* at 447-48. Nonetheless, the district court denied Judson's request to dismiss the third-party claims. *Id.* at 448. On appeal, the Fifth Circuit found that

> Judson's interpretation of FRCP 41 is correct. "[A]n action may be dismissed by the plaintiff *without order of the court* [] by filing a *notice* of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment." "The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim." In this case, it is undisputed that no adverse party had responded to Judson's claims.
>
> The district court erred in treating Judson's Notice of Dismissal as a motion to dismiss and in denying it "as moot." We, therefore, reverse the district court and remand this action to the district court with instructions to enter judgment recognizing that the claims specified in Judson's notice were properly dismissed at the time it was filed.

*Id.* (internal citations omitted).

The instant case is indistinguishable. Bilfinger has filed a "Notice of Voluntary Dismissal" and it is undisputed that neither

4

Murphy nor Corrpro filed a responsive pleading or otherwise appeared in this case before filing their memoranda opposing the dismissal. They claim that

> Once the matter was severed, Corrpro understood that it, Murphy and Bilfinger would take no further action until the underlying tort dispute was fully adjudicated by this Honorable Court. This understanding is consistent with the procedural history of the case, specifically the fact that no docket call or control order has been issued by this Court to date. Further, and again consistent with the agreement reached by Corrpro, Murphy and Bilfinger, Bilfinger never requested that a response to its Third Party Complaint be filed by Corrpro. In fact, as part of the agreement, Corrpro and Murphy understood that no answer to Bilfinger's Third Party Complaint would be filed so as to avoid impacting Bilfinger's defense of the plaintiff's claims.

Rec. Doc. 97 at 3. Despite any agreement that the parties may have entered into, Rule 41 and the Fifth Circuit's interpretation of Rule 41 are clear. Murphy and Corrpro failed to respond to Bilfinger's third-party complaint, so Bilfinger has a right to dismiss them, without court order, by simply filing a notice of dismissal. *See also Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963) ("Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right

5

running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file.").

As we suspected when Bilfinger moved to sever the third-party claims, Corrpro now confirms that Bilfinger, Corrpro, and Murphy "entered into an agreement regarding amicable resolution of the indemnity disputes amongst them, as well as a Joint Defense Agreement." Rec. Doc. 97 at 3. The agreement(s) has (have) not been produced in whole, but Corrpro and Murphy claim that Bilfinger's attempt to dismiss them is in violation of the agreement(s). Specifically, Corrpro claims that the clause in the agreement providing that "in the event of a judicial finding of no fault or liability on the part of Bilfinger Salamis *in the pending litigation* . . . ," "runs counter" to Bilfinger's attempts to dismiss, "forecloses the possibility of a judicial determination in this action, and should effectively foreclose any recovery of defense costs by Bilfinger." Rec. Doc. 97 at 4.

The instant dispute is more significant than it may appear. In its opposition, Corrpro pointed the Court to *Meloy v. Conoco, Incorporated*, 817 F.2d 275 (5th Cir. 1987). In that case, upon certified questions from the Fifth Circuit, the Louisiana Supreme Court stated that Louisiana Revised Statute § 9:2780 (the Louisiana Oilfield Indemnity Act of 1981, "LOIA") "nullifies completely any provision in any agreement that requires defense and/or

indemnification where there is any negligence or fault on the part of the indemnitee." *Id.* at 279. Further, the Louisiana Supreme Court stated that "whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined *after trial on the merits*." *Id.* at 839 (emphasis added). The statute, in pertinent part, provides:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. Rev. Stat. Ann. § 9:2780(B).

A well-researched opinion from Judge Doherty in the Western District of Louisiana helps to explain the basis for the instant dispute over Bilfinger's notice of dismissal. The Court in *Hefren v. Murphy Exploration & Production Company USA* explained that the Fifth Circuit previously held in *Tanksley v. Gulf Oil Corporation* that "an oil company that settled with the plaintiff was barred by the LOIA from pursing the contractor for indemnity because the oil company, *by choosing to settle with the plaintiff*, voluntarily foreclosed determination of its negligence or fault." 34 F. Supp. 3d 651, 657-60 (W.D. La. 2014), *aff'd,* 647 F. App'x 301 (5th Cir.

7

2016) (emphasis added) (citing *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515 (5th Cir. 1988)).

The Fifth Circuit in *Tanksley*, in reaching this conclusion, distinguished an earlier Fifth Circuit case. *See Melancon v. Amoco Prod. Co., Inc.*, 834 F.2d 1238 (5th Cir.), *amended on reh'g in part sub nom.,* 841 F.2d 572 (5th Cir. 1988). In *Melancon*, the Longshore and Harbor Workers' Act proscribed any judicial inquiry into fault or negligence, such that "there could never be a 'trial on the merits' to determine whether [the company] was 'free from fault and thus outside the scope of the [LOIA].'" *Hefren*, 34 F. Supp. 3d at 658 (citing *Melancon*, 834 F.2d at 1248) (quoting *Meloy*, 504, So. 2d at 839). In *Tanksley*, on the other hand,

> A trial on the merits to determine . . . fault or negligence was not only legally possible, it was imminent and was foreclosed only by the compromise settlement . . . The parties undoubtedly reached this settlement after a careful weighing of all relevant factors and risks. For reasons it deemed sufficient, Chevron opted to forego a trial at which it would either have been found liable or exonerated. The appeal of the certainty of settlement overrode the contending appeal of the uncertainty of trial. As a consequence, because of Chevron's choice, there will be no trial on the merits of Tanksley's claims to determine whether Chevron was "free from fault and thus outside the scope of the Act." Absent such a finding, or a legal bar preventing the finding, as in *Melancon*, we must conclude that the [LOIA] nullifies, in this instance, the indemnity agreement between Chevron and SEE.

848 F.2d at 517-18; *see also BJ Serv. Co., USA v. Thompson*, No. 08-510, 2010 WL 2024725, at *8-9 (W.D. La. May 14, 2010) (holding that an indemnitee who settled without a determination of fault

8

was precluded by the LOIA from seeking indemnity from the indemnitor).

In *American Home Assurance Company v. Chevron, USA, Incorporated*, the Fifth Circuit recognized that two Louisiana appellate courts disagreed with the outcome in *Tanksley*. 400 F.3d 265, 270 n.15 (5th Cir. 2005) (citing *Ridings v. Danos & Curole Marine Contractors, Inc.*, 97-2710, p. 7 (La. App. 4 Cir. 8/12/98); 723 So. 2d 979, 983 n.2 ("Whether the indemnitee was negligent or at fault (strict liability) in causing injury to the original plaintiff can be determined at trial between the indemnitee and the indemnitor even after the indemnitee has settled with the original plaintiff"); *Phillips Petroleum Co. v. Liberty Servs.*, 95-124, p. 8 (La. App. 3 Cir. 5/31/95); 657 So. 2d 405, 409, *writ denied*, 95-1650 (La. 10/27/95); 661 So. 2d 1354 ("we do not find that La. R.S. 9:2780(A) prevents one seeking indemnification from proving freedom from 'negligence or fault (strict liability)' in an action separate from the original litigation raising the issue. Nor do we conclude that dismissal of the plaintiff's tort action, for whatever reason, precludes continuation of the litigation by the indemnitee and indemnitor to determine the presence or absence of negligence or fault under La. R.S. 9:2780(A)"). In dicta, the Louisiana Supreme Court acknowledged the *Tanksley* decision, but found that it was "not necessary for [it] to either adopt or reject

the *Tanksley* conclusion." *Fontenot v. Chevron USA, Inc.*, 95-1425, p. 9 (La. 7/2/96); 676 So. 2d 557, 564 n.7.

Without deciding the issue, which is not now before us, it appears that if Bilfinger proceeds with his claims in federal court, *Tanksley* will govern and Bilfinger's settlement with Plaintiff will bar any recovery from Murphy and Corrpro. However, if Bilfinger's claims are dismissed from federal court, it could, presumably, pursue those claims in a state trial court bound to follow either the Louisiana Fourth's precedent in *Ridings* or the Louisiana Third's precedent in *Phillips*. Thus, it is not surprising that the parties are litigating a simple voluntary dismissal.

Nonetheless, despite any agreement that the parties may have to the contrary, and despite any truth to the assertion that Bilfinger is now forum shopping, the Federal Rules permit Bilfinger to dismiss his claims against Corrpro and Murphy without a court order. Therefore, the third-party complaints by Bilfinger Salamis, Inc. against Corrpro Companies, Inc. and Murphy Exploration & Production Co., USA were dismissed without prejudice on January 25, 2017, the date Bilfinger filed a notice of dismissal with this Court. *See* Rec. Doc. 96.

New Orleans, Louisiana, this 6th day of February, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE